UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-62193-CIV-ROSENBAUM

HERBERT STETTIN,

        Appellant,

v.

UNITED STATES OF AMERICA,
as successor in interest to
FIFTH COURT FINANCIAL, LLC,

        Appellee.

_____/

**OPINION AND ORDER**

This matter is before the Court upon the Initial Appellant's Brief of Appellant Herbert Stettin, ("Trustee") [D.E. 12]. The Court has considered the brief, all supporting and opposing filings, and the record in this case. For the reasons set forth below, the Court concludes that the Bankruptcy Court properly found that the Trustee is precluded from bringing an independent fraudulent-transfer action against the Government outside of the ancillary proceedings to criminal forfeiture. The Court therefore affirms the Bankruptcy Court's decision.

*BACKGROUND*

This case concerns the criminal forfeiture of the property of Scott Rothstein, who in 2009 pled guilty to RICO violations, money laundering, and other crimes associated with an elaborate Ponzi scheme in a criminal case before the Honorable James I. Cohn. *See United States v. Rothstein*, No. 09-60331, 2010 WL 2730749, at *1 (S.D. Fla. July 9, 2010) ("Criminal Case"). As a result of

the collapse of the Ponzi scheme, Rothstein's law firm, Rothstein Rosenfeldt Adler P.A. ("RRA"), was placed into involuntary bankruptcy proceedings before the Honorable Raymond B. Ray in the Bankruptcy Court from which this appeal stems, and Appellant Herbert Stettin was appointed Chapter 11 Trustee of the RRA estate. D.E. 12 at 3.

On May 29, 2009, prior to the collapse of the Ponzi scheme, Rothstein transferred $301,000 from an RRA bank account to fund the purchase of a home for Joseph and Jody Alu in Fort Lauderdale, Florida. D.E. 12 at 9.[1] Joseph Alu was the personal bodyguard of Rothstein's wife, Kim Rothstein. *Id*. This $301,000 was secured with a promissory note and mortgage on the property. However, the note and mortgage were executed not in favor of RRA, from which the funds nominally flowed, but rather, in favor of Fifth Court Financial LLC ("Fifth Court"), an entity created at the time of the transfer whose ultimate ownership rested with Rothstein. *Id*.

During ancillary proceedings to the criminal forfeiture before Judge Cohn, the Trustee asserted an interest in assets forfeited by the Government, including both the RRA account from which the $301,000 was initially transferred and Fifth Court. Criminal Case D.E. 192 at 3, 11. Judge Cohn's Final Order of Forfeiture excluded the RRA account from forfeiture to the United States. Criminal Case D.E. 708 at 24.[2] However, Fifth Court and all assets held by or owed to it were

---

[1] More specifically, the Trustee's brief notes that the funds were first transferred from RRA's Toronto Dominion Bank, N.A., ("TD Bank") account ending in 0923 to RRA's Gibraltar Bank account ending in 5443 and that the funds were then taken from the Gibraltar account to fund the Alus' home. D.E. 12 at 5.

[2] The Preliminary Order of Forfeiture noted that RRA's TD Bank account contained approximately $720,892.08 on November 11, 2009, after the monies were transferred from the account to fund the Alus' home. Criminal Case D.E. 134 at 9. On August 25, 2010, the District Court used the lowest-intermediate-balance rule to transfer $430,892.08 remaining in the account to third-party petitioners other than the Trustee. *See* D.E. 579 at 3, 7-9, 12; D.E. 708 at 24. The Government did not seek to forfeit the intermediary Gibraltar account through which the funds flowed to the Alus. *See* Criminal Case D.E. 1 at 25 (not listing Gibraltar account #5443 among the Gibraltar accounts

forfeited to the United States. Criminal Case D.E. 708 at 31.

The Trustee appealed this Final Order of Forfeiture and related rulings to the Eleventh Circuit Court of Appeals, D.E. 17 at 10, and the Eleventh Circuit vacated and remanded the District Court's decision. *See In re Rothstein, Rosenfeldt, Adler, P.A.*, 717 F.3d 1205, 1215-16 (11th Cir. 2013). More specifically, the Eleventh Circuit vacated the forfeiture of RRA bank accounts containing commingled proceeds of Rothstein's crime and untainted funds, finding that the District Court instead should have applied the applicable substitute-property provisions of criminal-forfeiture law. *Id.* at 1213-14.

These substitute-property provisions apply, *inter alia*, when property subject to criminal forfeiture "has been commingled with other property which cannot be divided without difficulty." 21 U.S.C. § 853(p)(1)(E). In such a case, "the court shall order the forfeiture of any other property of the defendant, up to the value of any property [commingled with other property]." 21 U.S.C. § 853(p)(2). *See also* 18 U.S.C. § 1963(m). Because the Government proceeded with forfeiture *in personam*, as opposed to *in rem*, however, the Eleventh Circuit explained that, in pursuing substitute assets, the Government may seek to forfeit only a property interest held individually by Rothstein, such as his shareholder's interest in RRA, and, thus, its bank accounts. 717 F.3d at 1214. But, the court cautioned, should the Government wish to proceed in this manner, the District Court may, at most, order Rothstein to assign his interest to the Government, subject to any claims that third parties might have. *Id*. at 1215. Then the Government, standing in Rothstein's shoes, may appear in the bankruptcy proceedings and state a claim to Rothstein's share of law-firm assets that survive bankruptcy. *Id.* Significantly, the District Court may not directly award Rothstein's financial share

---

that the Government sought to forfeit).

of RRA's firm to the Government because the Court does not have *in rem* jurisdiction over that interest since the Government elected to proceed against Rothstein *in personam* on the forfeiture. *See, generally, id.*

In addition, with regard to Fifth Court and other properties that the Trustee alleged had been purchased with funds from the RRA bank accounts, the Eleventh Circuit remanded the matter to the District Court to make factual findings about whether, in fact, the properties were bought using RRA bank-account funds. 717 F.3d at 1215. The court noted that "[i]f the funds used to acquire the other properties came from one or more RRA bank accounts, the Trustee prevails as a matter of law since the funds consisted of proceeds commingled with legitimate RRA funds and, as such, were not forfeitable as proceeds." *Id.*

The present case, however, stems from the Trustee's separate adversary complaint in Bankruptcy Court concerning the funds transferred from the RRA account and ultimately secured by a note and mortgage in favor of Fifth Court—funds subject to additional proceedings on remand in the ancillary forfeiture matter. D.E. 17 at 10-14. In Bankruptcy Court, the Trustee alleged that the transfer from the RRA account was fraudulent, seeking to avoid and recover the transfer under Bankruptcy Code 11 U.S.C. § 548(a)(1)(A) and § 726.105(1)(1), Fla. Stat. Bankruptcy Court D.E. 100 at 6-8. In addition, the Trustee asserted that the note and mortgage in favor of Fifth Court were invalid and unenforceable because Fifth Court did not provide consideration for the mortgage. Bankruptcy Court D.E. 100 at 8-9.

During the course of the proceedings, the Alus interpled funds with the Bankruptcy Court to fully satisfy and discharge the mortgage on their home. Bankruptcy Court D.E. 83 at 2. Thus, the issue before the Bankruptcy Court was essentially whether the interpled funds were owed to the

United States, as successor in interest to Fifth Court, or to the Trustee and the RRA estate. Bankruptcy Court D.E. 83 at 7. The Bankruptcy Court entered summary judgment in favor of the United States, finding that the Trustee had attempted to assert rights that could be properly asserted only through ancillary proceedings to criminal forfeiture. Bankruptcy Court D.E. 136 at 9-11. The Trustee appeals that judgment here.

## JURISDICTION

Federal courts are courts of limited jurisdiction. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003). With regard to appeals from bankruptcy courts, district courts enjoy jurisdiction over only three types of orders: 1) final orders, as described in 28 U.S.C. § 158(a)(1); (2) interlocutory appeals issued under 11 U.S.C. § 1121(d), as described in 28 U.S.C. § 158(a)(2); and, (3) with leave of the court, other interlocutory orders, as described in 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. Pro. 8001(b). *Tobkin v. Calderin*, 2012 WL 3609867, at *1 (S.D. Fla. Aug. 22, 2012). As this Court has explained, district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees." *Id.* at *1–2; 28 U.S.C. § 158(a)(1).

The Trustee properly seeks review under 28 U.S.C. § 158(a)(1). D.E. 12 at 1. He has timely filed this appeal, and the parties do not dispute jurisdiction. *See* D.E. 17 at 5. This Court agrees that it enjoys jurisdiction.

## STANDARD OF REVIEW

Bankruptcy courts are governed by the Federal Rules of Bankruptcy Procedure. Under Rule 8013, Fed. R. Bankr. P., a district court reviews the factual findings of a bankruptcy court for clear error. As for the conclusions of law of the bankruptcy court and the application of the law to the particular facts of the case, a district court must conduct a *de novo* review. *See In re Feingold*, 474

B.R. 293, 294 (S.D. Fla. 2012) (citing *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009); and *In re Club Assocs.*, 951 F.2d 1223, 1228–29 (11th Cir.1992)) ("The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions de novo.").

## *DISCUSSION*

Criminal forfeiture proceedings are governed by 21 U.S.C. § 853[3] and Rule 32.2, Fed. R. Crim. P. Before issuing a final order of forfeiture in criminal-forfeiture proceedings, a district court must first issue a preliminary order of forfeiture and give third parties the opportunity to assert claims over the property listed in the order. 21 U.S.C. § 853(n); Fed. R. Crim. P. 32.2(b), (c). Third parties have thirty days from the date of publication or receipt of notice of the preliminary order of forfeiture to petition the court for an ancillary proceeding to determine whether their interests in listed assets are superior to the defendant's interest in the same assets. 21 U.S.C. § 853(n)(2). After the court disposes of all such petitions, or if no petitions are submitted within the thirty-day period, the final order of forfeiture is issued, and the United States gains clear title to the remaining property that is the subject of the order of forfeiture. 21 U.S.C. § 853(n)(7). This final order extinguishes all third-party rights and interests in the forfeited property. *Id.*; *United States v. Marion*, 562 F.3d 1330, 1339 (11th Cir. 2009). Thus, "[i]f a third party fails to file a § 853(n)(2) petition within the

---

[3] In the criminal proceedings, the United States pled that forfeiture was proper under 18 U.S.C. § 1963, which applies to violations of the Racketeer Influenced and Corrupt Organizations Act, as well as under 21 U.S.C. § 853, which applies to the other criminal violations contained in the Information through 18 U.S.C. §982(b)(1). Criminal Case D.E. 1 at 17. Because the two provisions parallel each other, the District Court in the criminal case primarily referred to only § 853 in its rulings, *see* Criminal Case D.E. 708 at 1 n. 1, as did the Bankruptcy Court from which this appeal stems, Bankruptcy Case D.E. 136. *See also In re Rothstein, Rosenfeldt, Adler, P.A.*, 717 F.3d at 1208 n. 8 (noting that 21 U.S.C. § 853(e)(1)(A) is "virtually identical" to 18 U.S.C. § 1963(d)(1)). This Court will likewise continue to refer solely to § 853 for ease of reference.

prescribed thirty-day deadline, her interests in the property are forfeited." *United States v. Masilotti*, 510 F. App'x 809, 810 (11th Cir. 2013) (citing *Marion*, 562 F.3d at 1336).

The ancillary proceedings of § 853(n) "constitute[] the sole means by which a third-party claimant can establish entitlement to return of forfeited property." *United States v. Davenport*, 668 F.3d 1316, 1320 (11th Cir. 2012). Once the court has issued its preliminary order of forfeiture, "third-party claimants can establish their entitlement to return of the assets only by means of the hearing afforded under 21 U.S.C. § 853(n)." *Libretti v. United States*, 516 U.S. 29, 44 (1995). The law thus forecloses parallel civil suits brought outside of the § 853(n) process subsequent to the filing of an indictment that alleges that property is subject to forfeiture. *De Saro v. United States*, 173 F. App'x 760, 764 (11th Cir. 2006) (discussing *Roberts v. United States*, 141 F.3d 1468, 1469 (11th Cir. 1998) (per curiam)). And once the final order of forfeiture is entered, the Federal Rules of Criminal Procedure prevent a third party from objecting to it on the grounds that the third party had an interest in the property. Fed. R. Crim. P. 32.2(c)(2). In other words, a third party challenging the Government's claim to property subject to forfeiture must timely object in the § 853(n) ancillary proceeding or forever hold its peace.

Here, the Trustee timely submitted a petition for adjudication of interests in properties listed in the April 19, 2010, Preliminary Order of Forfeiture arising from Scott Rothstein's guilty plea and agreement to forfeit properties listed by the United States. *See Rothstein*, 2010 WL 2730749, at *1. The forfeited properties included RRA bank accounts, other miscellaneous properties, and real properties. *Id.* at *1 n. 1. During these ancillary proceedings, Judge Cohn found that the Trustee had standing to bring a third-party claim. *Id.* at *4. The Final Order of Forfeiture held that most of the

RRA accounts should not be forfeited to the United States but that the remaining assets—including Fifth Court—were properly forfeited to the United States. Criminal Case D.E. 708 at 24, 31.

Significantly, conspicuously absent from the Trustee's petition for adjudication of interests was any claim about the validity and enforceability of the Fifth Court note and mortgage. Instead, in the bankruptcy proceedings below and outside of § 853(n) ancillary proceedings, the Trustee attempted to establish a superior interest over the funds secured by the note and mortgage. But, under the circumstances here, the § 853(n) ancillary proceeding is the only proceeding during which these claims properly could have been heard. *Libretti*, 516 U.S. at 44. Under the record as it existed when the Trustee filed his Complaint with the Bankruptcy Court in this matter, therefore, the Trustee appears to have waived his ability to assert a claim to the Fifth Court note and mortgage because he failed to file a timely claim about the note and mortgage during the ancillary proceedings.[4] *Masilotti*, 510 F. App'x at 810 (citing *Marion*, 562 F.3d at 1336).

Nor, as the Trustee suggests, did the law bar him from bringing his claim concerning the Fifth Court note and mortgage during the ancillary proceeding. Specifically, the Trustee alleges that § 853(n)(6) bars certain third-party petitioners from asserting their rights or interests in forfeited property through ancillary procedures. D.E. 12 at 14. Section § 853(n)(6) reads in full,

> If, *after the hearing*, the court determines that the petitioner has established by a preponderance of the evidence that—
>> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or

---

[4] This Court does not opine on whether the period for making a claim on the note and mortgage restarts upon remand, or whether the court conducting forfeiture proceedings has the authority to consider out-of-time claims by third parties.

> > interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
> >
> > (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;
>
> the court shall amend the order of forfeiture in accordance with its determination.

21 U.S.C. § 853 (emphasis added). The Court interprets the plain language of § 853(n)(6) to protect three classes of petitioners: (1) petitioners who had a legal right, title, or interest in property that was vested in the petitioner rather than the defendant at the time of the commission of the acts that gave rise to the forfeiture of the property; (2) petitioners who had a legal right, title, or interest in property that was superior to any right, title, or interest of the defendant at the time of the commission of the acts that gave rise to the forfeiture of the property under this section; and (3) bona fide purchasers for value of the right, title, or interest in the property who were reasonably without cause to believe that the property was subject to forfeiture at the time of purchase. *See Rothstein*, 2010 U.S. Dist. LEXIS 69180, at *27-28 n. 9 (internal quotation marks omitted).

The Trustee asserts that § 853(n)(6) is a standing requirement that applies prior to the hearing. But by its terms, § 853(n)(6) plainly applies only "after the hearing" and provides the evidentiary standard by which the court may amend the order of forfeiture. 21 U.S.C. § 853(n)(6). It does not, as the Trustee contends, govern proceedings occurring before the hearing and prevent certain third parties from petitioning for ancillary proceedings or bringing certain claims under

ancillary proceedings, or otherwise allow the Court to prejudge the validity of the third-party petitioner's claims before the hearing takes place.

The standing requirements for third-party petitioners are instead found in § 853(n)(2), which provides that "any person other than the defendant, asserting a legal interest in property which has been ordered forfeited . . . may, within thirty days of the final publication of notice or his receipt of notice under [§ 853(n)(1)], whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2) (emphasis added). Thus, any person has standing to petition the court for an ancillary proceeding so long as she is (1) not the defendant, (2) asserts a legal interest in property that has been ordered forfeited, and (3) does so within thirty days of the final publication or receipt of notice. As noted in the ancillary proceeding, "Whether the Trustee has a superior interest and can prevail in an ancillary proceeding has nothing to do with standing." *Rothstein*, 2010 WL 2730749, at *4. The constitutional standing inquiry and the determination on the merits of the forfeiture action are separate inquiries. *De Saro*, 173 F. App'x at 764. Section 853(n)(2) therefore "requir[es] an initial showing of a 'legal interest' to obtain an ancillary hearing and § 853(n)(6) . . . requir[es] a showing of a 'superior legal interest' to prevail at the hearing." *Rothstein*, 2010 WL 2730749, at *4 n. 5.

The Trustee further alleges that his type of interest in the Fifth Court note and mortgage could not be properly pled as part of the ancillary proceedings because those proceedings concerned only the priority of ownership of forfeited assets, not their validity or enforceability. D.E. 12 at 14. However, as noted above, any third party with a "legal interest in the property" may petition the court for ancillary proceedings, 21 U.S.C. § 853(n)(2), and the forfeiture order shall be amended upon a showing of a superior "legal right, title, or interest in the property," 21 U.S.C. § 853(n)(6). The

language of § 853(n)(6) makes clear that the type of interest that petitioners can assert is not limited to title or ownership but also encompasses legal rights and other types of interest in the property. Standing requirements for ancillary proceedings are thus "forgiving, and any colorable claim on the property generally suffices." *De Saro*, 173 F. App'x at 764.[5]

Indeed, the Trustee's own petition for ancillary proceedings asserted that the RRA estate has a "legal interest" in a "100% interest" in Fifth Court. Criminal Case D.E. 192 at 11. The Trustee, however, now claims that the interest in Fifth Court alleged in his petition did not encompass an interest in the validity and enforceability of the securities held by Fifth Court—and that these non-ownership interests could not properly be asserted in the ancillary proceedings.

Notwithstanding the Trustee's statements in his petition for ancillary proceedings, the Trustee also has an independent legal interest in Fifth Court that arises from his fraudulent-transfer claim. Whether the Fifth Court note and mortgage are valid and enforceable affects the Trustee's ability to successfully assert a fraudulent-transfer claim with respect to the funds transferred from the RRA account. The Trustee thus has a legal interest in the validity and enforceability of the note and mortgage, and this interest is sufficient to bring a petition under the "forgiving" standing requirements of § 853(n)(2). *De Saro*, 173 F. App'x at 764. Therefore, to the extent that the Fifth

---

[5] The Trustee attempts to distinguish cases such as *37 Associates, Tr. for the 37 Forrester St., SW Trust v. REO Const. Consultants, Inc.*, 409 F. Supp. 2d 10 (D.D.C. 2006), and *Meincke v. United States*, 14 Cl. Ct. 383 (Cl. Ct. 1988), on the basis that those cases concern third-party claims of *ownership* over forfeited property, unlike the Trustee's present claims. D.E. 12 at 23 n. 15. Section 853(n), however, broadly allows courts to entertain claims based on "right, title, or interest," and does not distinguish between ownership and non-ownership interests. 21 U.S.C. § 853(n). Thus, cases such as *37 Associates* and *Meincke* that hold that ancillary proceedings are the exclusive fora in which to bring ownership claims over forfeited property are also applicable to those petitioners claiming other types of interest over forfeited assets.

Court assets were properly forfeited by the District Court, the Trustee's failure to raise his mortgage and fraudulent-transfer claims in the forfeiture proceedings waived his right to make such claims.

But, of course, now, the ancillary proceedings have been remanded to the District Court for further proceedings. Therefore, it is not clear at this point whether the Fifth Court assets were properly forfeited, and, thus, whether the Trustee's claims regarding them are foreclosed by his failure to assert them at the § 853(n) proceeding.

As the situation now stands, whether the Bankruptcy Court will have jurisdiction to entertain the Trustee's claims in light of the Eleventh Circuit's opinion depends on the factual determinations to be made by the District Court on remand. If, upon remand, the District Court finds that forfeiture of the assets held by or owed to Fifth Court was improper because the funds used to obtain the interest in Fifth Court derived from hopelessly commingled bank accounts, the Bankruptcy Court would then have jurisdiction to entertain the Trustee's claims that the note and mortgage were invalid and unenforceable and that the transfer from the RRA account was fraudulent, should the Trustee wish to pursue that claim. Under these circumstances, the note and mortgage would not be forfeited to the Government but instead would remain part of the bankruptcy estate, and, thus, forfeiture law—and specifically, the Trustee's failure to make a timely claim under § 853(n)—would not foreclose the Trustee's claims. However, if the District Court determines that the assets held by and owed to Fifth Court constitute "proceeds" and thus should remain forfeited, the Bankruptcy Court would continue to lack the ability to entertain claims concerning forfeited property not properly presented during the ancillary proceedings.

In short, the Trustee participated in the ancillary forfeiture proceedings and successfully appealed the resulting decision. The implications on the bankruptcy proceedings of the Eleventh

Circuit's remand of the forfeiture proceedings will not be clear until Judge Cohn has the opportunity to determine whether Fifth Court was properly forfeited. Because of the intervening Eleventh Circuit decision remanding the matter to the District Court for additional ancillary forfeiture proceedings, the Trustee's bankruptcy claim regarding Fifth Court is not ripe at this time. Accordingly, the appeal must be **DISMISSED.**

## *CONCLUSION*

For the foregoing reasons, the Bankruptcy Court's conclusions are **AFFIRMED** and the Trustee's appeal is **DENIED**. The Clerk of Court shall **CLOSE** this case.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 6th day of August 2013.

_____
ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies:

Counsel of Record